```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION


ESCAPES!, INC.,                       :
                                      :
     Plaintiff,                       :
                                      :
vs.                                   :   CIVIL ACTION 09-515-KD-M
                                      :
LEGACY LAND AND DEVELOPMENT LLC,      :
ESCAPES ACQUISITION COMPANY,          :
LLC, WILLIAM J. KEARNEY, ALLAN        :
A. BUNIAK, DOLORES "DEE"              :
BALLIETT,                             :
                                      :
     Defendants.                      :
```

REPORT AND RECOMMENDATION

The Motion to Dismiss filed by Defendant Dolores "Dee" Balliett (Doc. 17) has been referred for report and recommendation, under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2.  Diversity jurisdiction has been invoked in this Court pursuant to 28 U.S.C. § 1332.  After consideration, it is recommended that Defendants' Motion (Doc. 17) be denied.

The facts, very briefly, are as follows.  Plaintiff Escapes!, Inc. (hereinafter *Escapes*) owns a resort, Escapes! to the Shores (hereinafter *Property*), a "newly-constructed 20-floor mixed use condominium property" located in Orange Beach, Alabama (Doc. 1, ¶¶ 11-12).  Escapes entered into negotiations with Defendants for the sale of the Property (Doc. 1, ¶ 13).  Though an agreement was reached, Defendants failed to close the transaction by paying the $36 million purchase price, causing

Escapes to experience considerable expense (Doc. 1, ¶¶ 28, 30-31).

Plaintiff brought this action, asserting claims of fraudulent misrepresentation, promissory fraud, fraudulent suppression, breach of contract for damages and specific performance, conspiracy to defraud, and promissory estoppel; Escapes seeks compensatory and punitive damages (Doc. 1). Defendant Delores "Dee" Balliett has answered the Complaint (Doc. 16) and filed a Motion to Dismiss her from this action (Doc. 17). Plaintiff has filed a response to Balliett's Motion (Doc. 35) to which Defendant has replied (Doc. 39).

The Court notes, initially, that "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  In order to state a claim for relief, the Federal Rules of Civil Procedure state that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  The U.S. Supreme Court explained that the purpose of the rule was to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S.

41, 47 (1957).[1]  While factual allegations do not have to be detailed, they must contain more than "labels and conclusions;" "a formulaic recitation of the elements of a cause will not do." *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* (citations omitted).  "Facts that are 'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of "entitle[ment] to relief."'"  *Weissman v. National Association of Securities Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007) (quoting *Twombley*, 550 U.S. 557) (quoting *DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1950 (2009) (citing *Twombley*, 550 U.S. at 556.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of conduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

---

[1] *Conley* also stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley*, 355 U.S. at 45-46.  The U.S. Supreme Court has done away with this standard in *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 557-563 (2007).  The Court, nevertheless, finds *Conley*'s statement regarding the purpose of Rule 8(a)(2) to be useful here in deciphering the analysis necessary for evaluating Plaintiff's claims.

relief.'" *Iqbal*, — U.S. —, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).  As noted by the Supreme Court, Plaintiffs must "nudge[] their claims across the line from conceivable to plausible[; otherwise,] their complaint must be dismissed." *Twombly*, 550 U.S. at 570.  It is noted, however, that a complaint may be dismissed, under Federal Rule of Civil Procedure 12(b)(6), "on the basis of a dispositive issue of law."  *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir.) (citing *Neitzke v. Williams*, 490 U.S. 319 (1989)), *cert. denied*, 502 U.S. 810 (1991).

On first blush, Defendant's Motion to Dismiss (Doc. 17) appears to be an assertion that this Court does not have *in personam* jurisdiction over her as she has not established minimum contacts with Alabama.  However, after further study, the Court believes that Balliett is, more-than-likely, challenging the claims against her.  In any event, out of an abundance of caution, the Court will discuss both of these potential challenges.  The Court finds that the evidence of record is sufficient for a discussion of both.

The Court will first examine the Motion as though Balliett is seeking to be dismissed from this action, pursuant to Fed.R.Civ.P. 12(b)(2), because the Court lacks *in personam* jurisdiction over her.  To determine whether this Court enjoys personal jurisdiction over the Defendant, a non-resident defendant, the Court must examine the relationship of the

defendant, the forum, and the matter to be litigated.  *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

Alabama[2] courts ask two questions in making this determination:  (1) Is it foreseeable to the defendant that she will be sued in Alabama and (2) how much contact does the defendant have with Alabama?  *Lowry v. Owens*, 621 So.2d 1262, 1265 (Ala. 1993) (*citing Keelean v. Central Bank of the South*, 544 So.2d 153, 156 (Ala. 1989), *overruled on other grounds by Professional Ins. Corp. v. Sutherland*, 700 So.2d 347 (Ala. 1997)).  It is noted, though, that "[t]he reach of personal jurisdiction of an Alabama court over nonresident defendants under Rule 4.2(a)(2), A.R.Civ.P., extends to the permissible limits of due process."  *Lowry*, 621 So.2d at 1264 (*citing Alabama Waterproofing Co. v. Hanby*, 431 So.2d 141, 145 (Ala. 1983)).  The Alabama rule states that

> [a] person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's . . . having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action.

Ala.R.Civ.P. 4.2(a)(2)(I).

Defendant has asserted, in her Motion, that she is a

---

[2]Alabama law controls.  *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

5

resident of Maitland, Florida; is employed in Winter Park, Florida; has not been in the State of Alabama personally or otherwise at any time in the past 10 years; and has never done any business personally inside the State of Alabama. (Doc. 17, ¶¶ 1-4).

Plaintiff has responded to these claims by asserting that "Balliett was an active participant in the real estate transaction and fraudulent conduct that forms the basis of Escapes' Complaint" (Doc. 35, p. 1 n.1). As proof for this assertion, Plaintiff has proffered the following evidence.

Michael Cox, by way of affidavit, stated that he was Escape's representative during the negotiations of the Property with Defendants William Kearney and Al Buniak (Doc. 35, Cox Aff., ¶¶ 4-5). Cox stated that, at the first meeting, Kearney told him that Balliett

> was his financial advisor. He described her as his "financial gatekeeper." He explained that she handled all of his finances and manages his money and that she would be involved in the transaction. Kearney said that Balliett would be his point of contact and that all information sent to him regarding the transaction was to go through Balliett. Kearney also told [him] that all emails to him should be sent via Balliett's email address [].
> Over the course of the negotiations concerning the sale of the Property, every email exchanged between me and Kearney went through Balliett's email address.

(Doc. 35, Cox Aff., ¶¶ 6-7). Cox indicated that he communicated

6

directly, by phone and e-mail, with Balliett (*id.* at ¶ 8). "Balliett routinely referred to Kearney as her 'client' and explained [] that she was advising Kearney with regard to the financial aspects of the Escapes deal. During one of [their] conversations, she told [Cox] that if Kearney 'wants to do the deal, he can'" (*id.* at ¶ 9). Cox stated that he had been led to believe that Balliett "was an active and principal participant in the purchase of the Property" and that "Balliett never indicated [] that she was not involved" (*id.* at ¶ 11).

Lance Niel, by way of affidavit, stated that he is a real estate agent in Orange Beach, Alabama who has worked on behalf of Kearney for several years, including the negotiations for this Property (Doc. 35, Niel Aff., ¶¶ 2-3, 7). Niel, like Cox, stated that Kearney had informed him that Balliett was his financial advisor, his "financial gatekeeper," and "that she handled all of his finances and manages his money;" Kearney further explained that "Balliett was his 'point person' and that all information sent to him was to be funneled through Balliett" (*id.* at ¶ 4). Kearney informed Niel, through emails sent from Balliett's address, that he carried no debt and was in no financial distress (*id.* at ¶ 6); Balliett herself told Niel "that Kearney was financially capable of funding the transaction to purchase the Property" (*id.* at ¶ 12). Niel met with Kearney in Jacksonville and Atlanta during the summer of 2008 to discuss various business deals, including the Escapes Property; the Affiant later received

7

a reimbursement check for expenses, signed by Balliett, which was drawn on a joint checking account maintained by Kearney and Balliett (*id.* at ¶¶ 8-9).  Niel stated that he and Kay Gilpin formed Great Southern Resorts Realty, LLC, under Florida law, "for the purpose of managing the Property after it was purchased; Balliett is listed as [its] registered agent" (*id.* at ¶ 7; *see also* Doc. 35, Niel Aff., Exhibit 3).  Because of Balliett's involvement in the negotiations, Niel thought that she "was an active and principal participant in the purchase of the Property; Balliett never indicated [] that she was not involved" (Doc. 35, Niel Aff., ¶ 13).

    Kay Gilpin, by way of affidavit, stated that she is a real estate agent who met Kearney, through Lance Niel, and introduced him to Michael Cox, after which negotiations began for the purchase of the Escapes Property (Doc. 35, Gilpin Aff., ¶¶ 2-4).  When Gilpin first met him, Kearney informed her that Balliett was his financial advisor, his "financial gatekeeper," and "that she "handled all of his finances and managed his money;" Kearney further told Gilpin "that all information sent to him was to be directed through Balliett" as he did not have an e-mail address (*id.* at ¶ 5).  Gilpin stated that "[f]rom the very beginning of the Escapes transaction, all of [her] written communications to and from Kearney involved Balliett" (*id.*).  In conversations, Balliett "routinely referred to Kearney as her 'client' and explained [] that she was Kearney's financial advisor with regard

8

to the Escapes deal and his business in general.  Balliett also represented [] that Kearney was financially capable of funding the transaction to purchase the Property" (*id.* at ¶ 8).  Gilpin also understood Balliett to be "a principal participant in the purchase of the Property.  Balliett never suggested anything to the contrary" (*id.* at ¶ 9).

As support for its argument that Balliett has established minimum contacts with Alabama, Estates has pointed to *Bowling v. Founders Title Co.*, 773 F.2d 1175, 1179 (11th Cir. 1985), *cert. denied sub nom. Zoldessy v. Founders Title Company*, 475 U.S. 1109 (1986).  In *Bowling*, a landowner and two real estate brokers brought an action against a California title company when sales of Alabama farm land failed to materialize.  The Eleventh Circuit Court of Appeals determined that the California title company, Founders, had established minimum contacts with Alabama.  *Bowling*, 773 F.2d at 1179.  Specifically, the Court held as follows:

> We find that Founders' contacts in the present case, although admittedly few, were deliberate and knowing.  Founders agreed to act as escrow agent for Buderus, whom it knew was purchasing large quantities of land in Alabama-thus, appellant was well aware of the situs of the scheme.  Although the phone calls were initiated by the plaintiffs, Founders knowingly gave them information (via Nohrden, a company officer) to induce them to sell the land.  Founders also mailed receipts to the plaintiffs in Alabama.  These contacts were directly connected to the cause of action in this case.  Further, Founders is by

>no means unsophisticated or parochial: it is
>an established commercial entity that
>regularly conducts interstate business.
>Thus, there is no unfair surprise in the
>maintenance of this suit in Alabama. In
>short, Founders was well acquainted with the
>players and the plot, the Alabama setting,
>and the importance of its own well-rehearsed,
>albeit supporting, role in this scheme. The
>district court's exercise of personal
>jurisdiction here does not offend due
>process.

*Bowling*, 773 F.2d at 1179.

The factual circumstances here are very similar to those of *Bowling*. In this action, three different witnesses involved in the negotiations of this Property—situated in Alabama—have stated that Defendant Kearney held out Balliett as his financial advisor and gatekeeper for all information; the witnesses stated that all information between each of them and Kearney went through Balliett. Furthermore, the witnesses all stated that Balliett had informed them that Kearney was financially capable of completing the purchase of this Property. Affiant Niel also provided evidence that Balliett was the registered agent for a company that was incorporated under the laws of Florida but whose principal—and only—place of business was in Alabama; that business was incorporated for the purpose of managing the Property once the sale was completed.

This Court finds that Defendant Balliett has sufficient contacts with this State so that it was foreseeable that she would be sued here under *Lowry*. This Court further finds that

allowing this action to proceed against Balliett does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

The Court will now consider Defendant's Motion as a challenge to the claims made against her. The Court notes initially that Balliett has not challenged any claim in particular; rather, she protests her involvement in this action at all (Docs. 17, 39).

The Complaint asserts that "Balliett participated in the negotiations and repeatedly assured Escapes that Kearney possessed and had access to funds sufficient to purchase the property" (Doc. 1, ¶ 17). This is the only allegation in the Complaint which singles out Balliett by name. Nevertheless, the Court understands, by the assertions and arguments made in the Complaint and in the evidence presented, that Escapes considers Balliett to be a principal to the contract and, as such, a proper defendant in this action.

The Court has already reviewed the evidence of record and further finds that Defendant Balliett has failed to demonstrate that Plaintiff cannot establish a single element of any of the claims against her. Though Defendant denies the assertions made against her, the Court finds that Escapes' Complaint has satisfied the requirements of *Twombley* and *Iqbal*.

After thorough consideration of all the relevant pleadings

of record, it is recommended that Defendant Balliett's Motion to Dismiss (Doc. 17) be denied.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.  **<u>Objection</u>**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed <u>de novo</u> and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  **<u>Transcript (applicable where proceedings tape recorded)</u>**.

Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

    DONE this 30th day of November, 2009.

                                     s/BERT W. MILLING, JR.
                                     UNITED STATES MAGISTRATE JUDGE