IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ESCAPES!, INC.,                          :
                                         :
        Plaintiff,                       :
                                         :
vs.                                      :     CIVIL ACTION 09-515-KD-M
                                         :
LEGACY LAND AND DEVELOPMENT LLC,:
ESCAPES ACQUISITION COMPANY,    :
LLC, WILLIAM J. KEARNEY, ALLAN  :
A. BUNIAK, DOLORES "DEE"        :
BALLIETT,                       :
                                         :
        Defendants.                      :


<u>REPORT AND RECOMMENDATION</u>


        The Motion to Dismiss filed by Defendant William J. Kearney
(Docs. 41, 54) has been referred for report and recommendation,
under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2.  Diversity
jurisdiction has been invoked in this Court pursuant to 28 U.S.C.
§ 1332.  After consideration, it is recommended that Defendant's
Motion (Docs. 41, 54) be denied.

        The facts, very briefly, are as follows.  Plaintiff
Escapes!, Inc. (hereinafter *Escapes*) owns a resort, Escapes! to
the Shores (hereinafter *Property*), a "newly-constructed 20-floor
mixed use condominium property" located in Orange Beach, Alabama
(Doc. 1, ¶¶ 11-12).  Escapes entered into negotiations with
Defendants for the sale of the Property (Doc. 1, ¶ 13).  Though
an agreement was reached, Defendants failed to close the
transaction by paying the $36 million purchase price, causing

Escapes to experience considerable expense (Doc. 1, ¶¶ 28, 30-31).

Plaintiff brought this action, asserting claims of fraudulent misrepresentation, promissory fraud, fraudulent suppression, breach of contract for damages and specific performance, conspiracy to defraud, and promissory estoppel; Escapes seeks compensatory and punitive damages (Doc. 1). Defendant William J. Kearney filed a Motion to Dismiss (hereinafter *Motion*) which would dismiss him from this action (Docs. 41, 54).  Plaintiff has filed a response to Kearney's Motion (Doc. 60).

The Court notes, initially, that "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  In order to state a claim for relief, the Federal Rules of Civil Procedure state that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  The U.S. Supreme Court explained that the purpose of the rule was to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S.

41, 47 (1957).[1]  While factual allegations do not have to be detailed, they must contain more than "labels and conclusions;" "a formulaic recitation of the elements of a cause will not do." *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* (citations omitted).  "Facts that are 'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of "entitle[ment] to relief."'"  *Weissman v. National Association of Securities Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007) (*quoting Twombley*, 550 U.S. 557) (*quoting DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1950 (2009) (*citing Twombley*, 550 U.S. at 556.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of conduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

---

[1] *Conley* also stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.  The U.S. Supreme Court has done away with this standard in *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 557-563 (2007).  The Court, nevertheless, finds *Conley*'s statement regarding the purpose of Rule 8(a)(2) to be useful here in deciphering the analysis necessary for evaluating Plaintiff's claims.

relief.'" *Iqbal*, — U.S. —, 129 S.Ct. at 1950 (quoting
Fed.R.Civ.P. 8(a)(2)).  As noted by the Supreme Court, Plaintiffs
must "nudge[] their claims across the line from conceivable to
plausible[; otherwise,] their complaint must be dismissed."
*Twombly*, 550 U.S. at 570.  It is noted, however, that a complaint
may be dismissed, under Federal Rule of Civil Procedure 12(b)(6),
"on the basis of a dispositive issue of law."  *Executive 100,
Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir.) (citing
*Neitzke v. Williams*, 490 U.S. 319 (1989)), *cert. denied*, 502 U.S.
810 (1991).

The allegations in the Complaint relevant to the disputes
raised in Kearney's Motion follow.[2]

> ¶ 7.  On information and belief, Kearney
> and [Defendant] Buniak are the sole members
> of Legacy, Legacy is the sole member of EAC,
> and [Defendant] Balliett is an investment
> advisor performing consulting and advisory
> services for Kearney, Legacy, and EAC.
>
> ***
>
> ¶ 13.  The causes of action set forth
> herein arise from a scheme and related
> fraudulent conduct perpetrated by Defendants,
> whereby and pursuant to which Defendants
> represented to Escapes that Legacy and/or EAC
> and/or their assigns would purchase the
> Property.  In reliance on Defendants'

---

[2]The Court, at this time, is going to set out all parts of the
Complaint which it considers relevant to the entire discussion in this
Motion, rather than setting out sections of the Complaint in piecemeal
fashion as it relates to the specific enquiry at hand.  The Court will
reference the specific relevant sections, when necessary, in
addressing each component of the Motion.

misrepresentations and other acts of deceit,
Escapes prematurely removed the Property from
the real estate market before an
unprecedented global economic and financial
downturn, lost substantial tax benefits, and
incurred substantial expense in preparation
for a closing which, because of Defendants'
misconduct and misrepresentations, never
occurred.

¶ 14.   In June 2008, Kearney and Buniak
were introduced to Escapes through Kay Gilpin
("Gilpin"), a real estate broker in Gulf
Shores, Alabama.  Kearney and Buniak advised
Escapes that they were very interested in
purchasing the Property.  Kearney held
himself out as a wealthy real estate
developer and investor; he also represented
that he was a principal in the Kearney
Companies, a collection of family-owned
multi-faceted businesses that include
construction companies and a real estate
development firm.

¶ 15.   Thereafter, Gilpin, Kearney, and
Buniak met with Mike Cox, a representative
from Escapes, to discuss the acquisition of
the Property.  At that meeting, Kearney and
Buniak called Escapes' officers, John Cooper
and Kent Burger, to confirm their desire to
purchase the Property.

¶ 16.   Escapes and Defendants engaged in
extended, comprehensive negotiations
regarding the terms of a purchase agreement
during the summer and fall of 2008.  These
negotiations were conducted over the
telephone, via e-mail, and at in-person
meetings.

¶ 17.   Balliett participated in the
negotiations and repeatedly assured Escapes
that Kearney possessed and had access to
funds sufficient to purchase the Property.

¶ 18.   On or about October 24, 2008, in
furtherance of Defendants' stated interest to
acquire the Property, the parties agreed to
an acquisition price of $36 million.

¶ 19.   In addition, Defendants agreed with Escapes that they would immediately begin a due diligence investigation. Escapes, in turn, agreed to provide Defendants with whatever they reasonably needed to conduct their requested due diligence.  Escapes also agreed that it would not negotiate with other potential purchases or otherwise "shop" the Property.

¶ 20.   At Defendants' request, Escapes expended substantial time, money, and effort cooperating with Defendants' due diligence investigation.  Among other things, Escapes provided Defendants with financial and other records, allowed Defendants and their representatives to make numerous inspections of the Property, and made its Arkansas and Alabama employees available to answer Defendants' representatives' questions and to provide Defendants' representatives with whatever information they requested.  And, as promised, Escapes did not negotiate with other potential purchases or otherwise "shop" the Property.

¶ 21.   Following their due diligence investigation, Defendants notified Escapes of their decision to proceed with the acquisition of the Property.  Defendants assured Escapes that they intended to close the transaction and purchase the Property.  Moreover, Defendants repeatedly assured Escapes that they possessed and had access to sufficient funds to close the transaction.

¶ 22.   Because the Property was available for special depreciation-based tax benefits under The Gulf Opportunity Zone Act of 2005 (the "GO Zone Act"), it was of utmost importance that the parties close the sale of the Property before January 1, 2009.  Under the GO Zone Act, the owners of certain property in certain Hurricane Katrina-affected counties were eligible for a special depreciation allowance if their property was purchased between August 2005 and December 31, 2008.  Because the Property was eligible for GO Zone Act tax benefits, the Property

6

was particularly desirable to purchasers that could close on or before December 31, 2008.

¶ 23.   In connection with their repeated and consistent representations that they would close the transaction and purchase the Property, Defendants retained the law firm of Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. ("Baker Donelson") to draft purchase and closing documents.  Baker Donelson has offices throughout the Southeast, including Birmingham, Alabama. Three Baker Donelson attorneys were involved in the closing process:  Louann P. Smith and Jackson W. Seal from Baker Donelson's Chattanooga, Tennessee office and J. Murphy McMillan from Baker Donelson's Birmingham, Alabama office.

¶ 24.   Defendants also employed (1) Lance Niel, a broker with Great Southern Resorts Realty in Orange Beach, Alabama, to broker the transaction; and (2) Gulf Shores Title Company, Inc. of Gulf Shores, Alabama, to prepare title work.  In furtherance of their fraud and conspiracy to defraud Escapes, Defendants communicated through phone, e-mail, and otherwise with Lance Niel, their broker, and with agents and employees of Gulf Shores Title Company, Inc.

¶ 25.   Numerous drafts of a purchase agreement, ancillary documents, exhibits, and other disclosures were negotiated and exchanged between Escapes' counsel and Baker Donelson with the stated goal of closing the transaction on or before December 31, 2008. Although Escapes initially required a deposit of Earnest Money with an Escrow Agent, Defendants convinced Escapes that the deposit was not necessary because they had no intention of backing out of the deal and because the transaction would be closed in short order at which time all purchase funds — the entire $36 million — would be wired to Chicago Title Insurance Company ("the Closing Agent").

¶ 26.   On or about December 23, 2008,

7

Kearney and Buniak formed EAC for the
putative purpose of acquiring the Property.

¶ 27.  As December 31, 2008 approached,
Defendants and Escapes exchanged numerous
drafts of documents, engaged a title company
to prepare title work regarding the Property,
and otherwise prepared for closing.  Over the
course of this process, Defendants regularly
represented that they would consummate the
transaction and that $36 million,
constituting the Property's purchase price,
would be wired to the Closing Agent.

¶ 28.  By December 31, 2008, the
parties' deal was complete and an agreement
as to all materials terms existed.  The only
remaining items to close the sale of the
Property were the collection of signatures on
the pertinent documentation and the wiring,
by Defendants, of the $36 million purchase
price to the Closing Agent.

¶ 29.  On December 31, 2008, Defendants,
through their counsel, repeatedly represented
to Escapes that $36 million had, in fact,
been wired to the Closing Agent.

¶ 30.  Notwithstanding Defendants'
misrepresentation that they had wired $36
million to the Closing Agent, said agent
reported to Escapes, late in the day on
December 31, 2008, that the $36 million
purchase price had not, in fact, been wired
by Defendants.  At that point, Escapes
realized that Defendants had no intention of
closing the transaction and that Defendants
had continually made false representation to
Escapes regarding their intent to do so.

¶ 31.  As a result of Defendants'
misrepresentations, Escapes incurred
substantial damages, including, but not
limited to, the loss of the Property's
marketability and GO Zone Act tax benefit
attributes, removal of the Property from the
real estate market before an unprecedented
global economic and credit market downturn,
attorney's fees, costs, expenses, and lost

opportunity, all well in excess of the jurisdictional limit of this Court.

\* \* \*

¶ 33.  Defendants made the following misrepresentations of material fact to Escapes:

a.  Defendants possessed and/or had access to the $36 million purchase price because, among other things, Kearney was a wealthy businessman from a wealthy family engaged in construction and real estate development ventures;

b.  Defendants were satisfied with all information provided to them concerning the Property;

c.  Defendants needed no further information on which to base their purchase decision;

d.  Defendants had no intention to terminate the transaction;

e.  Defendants desired to focus the parties' activities on negotiating and drafting the agreements and related documents necessary to close the transaction before the quickly-approaching expiration of the GO Zone Act tax benefits;

f.  There was no need for the Earnest Money Deposit because the transaction would close within a short period of time and, in any event, no later than December 31, 2008.

g.  Defendants were satisfied with and approved the final draft of the purchase agreements and would close the transaction and purchase the Property by December 31, 2008; and

h.  In connection with the purchase of the Property, $36 million would be, and in fact was, wired to the Closing Agent.

¶ 34.  In connection with Defendants' scheme to defraud, Defendants hired counsel and negotiated and exchanged numerous drafts of a purchase agreement, ancillary documents, exhibits, and other disclosures.

9

¶ 35.  Escapes reasonably relying upon Defendants' misrepresentations and other acts of deceit, spent a substantial amount of time, money, and effort attempting to close the purchase of the Property.  As a result of its reasonable reliance on Defendants' misrepresentations and other acts of deceit, Escapes removed the Property from the real estate market before an unprecedented global economic and credit market downturn and, ultimately, lost GO Zone Act tax benefits that would have been attractive to other potential purchasers.

¶ 36.  As a direct and proximate result of its reasonable reliance on Defendants' misrepresentations and other misconduct, Escapes sustained damages in an amount to be determined at trial.

* * *

¶ 38.  Defendants made the following misrepresentations of material fact to Escapes:

a.  Defendants possessed and/or had access to the $36 million purchase price because, among other things, Kearney was a wealthy businessman from a wealthy family engaged in construction and real estate development ventures;

b.  Defendants were satisfied with all information provided to them concerning the Property;

c.  Defendants needed no further information on which to base their purchase decision;

d.  Defendants had no intention to terminate the transaction;

e.  Defendants desired to focus the parties' activities on negotiating and drafting the agreements and related documents necessary to close the transaction before the quickly-approaching expiration of the GO Zone Act tax benefits;

f.  There was no need for the Earnest Money Deposit because the transaction would close within a short

period of time and, in any event, no
later than December 31, 2008.

     g.  Defendants were satisfied with
and approved the final draft of the
purchase agreements and would close the
transaction and purchase the Property by
December 31, 2008; and

     h.  In connection with the purchase
of the Property, $36 million would be,
and in fact was, wired to the Closing
Agent.

¶ 39.  Defendants represented that they
intended to close the transaction and to
purchase the Property up to, and including,
December 31, 2008, when Defendants knew they
had no intention of doing so.

¶ 40.  Defendants' repeated
misrepresentations were made with a present
intent to deceive Escapes.

¶ 41.  In connection with Defendants'
scheme to defraud, Defendants hired counsel
and negotiated and exchanged numerous drafts
of a purchase agreement, ancillary documents,
exhibits, and other disclosures.

¶ 42.  Escapes, reasonably relying upon
Defendants' misrepresentations and actions,
spent a substantial amount of time, money,
and effort attempting to close the purchase
of the Property.  As a result of its
reasonable reliance on Defendants'
misrepresentations and other misconduct,
Escapes removed the Property from the real
estate market before an unprecedented global
economic and credit market downturn, and
ultimately, lost GO Zone Act tax benefits
that would have been attractive to other
potential purchasers.

¶ 43.  As a direct and proximate result
of its reasonable reliance on Defendants'
misrepresentations, Escapes sustained damages
in an amount to be determined at trial.

***

11

¶ 45.  Defendants made the following misrepresentations of material fact to Escapes:

a.  Defendants possessed and/or had access to the $36 million purchase price because, among other things, Kearney was a wealthy businessman from a wealthy family engaged in construction and real estate development ventures;

b.  Defendants were satisfied with all information provided to them concerning the Property;

c.  Defendants needed no further information on which to base their purchase decision;

d.  Defendants had no intention to terminate the transaction;

e.  Defendants desired to focus the parties' activities on negotiating and drafting the agreements and related documents necessary to close the transaction before the quickly-approaching expiration of the GO Zone Act tax benefits;

f.  There was no need for the Earnest Money Deposit because the transaction would close within a short period of time and, in any event, no later than December 31, 2008.

g.  Defendants were satisfied with and approved the final draft of the purchase agreements and would close the transaction and purchase the Property by December 31, 2008; and

h.  In connection with the purchase of the Property, $36 million would be, and in fact was, wired to the Closing Agent.

¶ 46.  Defendants concealed and did not inform Escapes that they did not intend to close the transaction and purchase the Property.  In fact, it was not until Defendants failed to wire the $36 million purchase price to the Closing Agent on December 31, 2008, as promised, that Escapes realized Defendants had no intention of purchasing the Property.

12

¶ 47.  In light of the nature of the transaction, the inquiries made by Escapes, and Defendants' special knowledge, Defendants had a legal duty to inform Escapes that they did not intend to purchase the Property.

¶ 48.  In connection with Defendants' scheme to defraud, Defendant hired counsel and negotiated and exchanged numerous drafts of a purchase agreement, ancillary documents, exhibits, and other disclosures.

¶ 49.  Defendants' failure to inform Escapes that they did not intend to close the transaction and purchase the Property induced Escapes to spend a substantial amount of time, money, and effort attempting go close said transaction.  Further, as a result of its reasonable reliance on Defendants' misrepresentations and suppression of the truth, Escapes removed the Property from the real estate market before an unprecedented global economic and credit market downturn and, ultimately, lost GO Zone Act tax benefits that would have been attractive to other potential purchasers.

¶ 50.  As a direct and proximate result of Defendants' failure to inform Escapes that they had no intention of closing the sale of the Property, Escapes sustained damages in an amount to be determined at trial.

***

¶ 52.  The parties agreed to the conveyance of the Property as specifically alleged herein.  Although Escapes worked diligently to close the sale and stood ready to tender title to and/or convey the Property to Defendants and to satisfy its obligations pursuant to the parties' agreement, Defendants breached the agreement by failing to satisfy their obligation to purchase the Property.

***

¶ 54.  The parties agreed to the sale of

13

the Property as alleged specifically herein.
Although Escapes worked diligently to close
the sale and stood ready to tender title to
and/or convey the Property to Defendants,
Defendants refused to tender the purchase
price.

¶ 55.  Escapes now offers to convey the
Property.

\*\*\*

¶ 57.  Defendants entered into a civil
conspiracy to accomplish an unlawful end or
to accomplish a lawful end by unlawful means.
Specifically, Defendants entered into a civil
conspiracy to defraud Escapes, as alleged in
the factual allegations stated herein.
Defendants acted in concert with the intent
to cause injury to Escapes.

(Complaint).

Before taking up Kearney's specific assertions in bringing
this Motion, the Court notes Escapes' assertion that Kearney has
not challenged the claim against him for promissory estoppel
(Doc. 60, p. 4 n.2).  After a careful reading of Defendant's
Motion (Docs. 41, 54), the Court agrees with Escapes:  Kearney
has not specifically challenged the claim against him for
promissory estoppel (*see* Complaint, ¶¶ 58-62).[3]  Therefore, the
Court will not discuss this claim.

In his Motion, Plaintiff has challenged the existence of a

---

[3]The Court notes, however, that Kearney is acting as his own
attorney and that, apparently, he is untrained in legal writing.
While it will not act as Defendant's counsel, the Court will be
mindful of Kearney's *pro se* status in reviewing his pleadings and
arguments.

contract.  More specifically, Kearney stated the following;

> At no time has Plaintiff produced a
> document that is anything other than a letter
> of interest.  A real estate transaction
> involves a purchase and sale with two parties
> who have completed a meeting of the minds.
> There would be consideration.  Plaintiff's
> attorneys have produced a letter of interest.
> There is no reference or proof of
> consideration.

(Doc. 41, p. 5).  Defendant has also asserted the following:

"There was no contract at all" (Doc. 41, p. 5); "there are no

supporting factual verifications of the Contract" (Doc. 54, p.

2); "[i]n this set of facts there is no showing of a Contract"

(Doc. 54, p. 2).  Kearney further asserted that because no

earnest money deposit was ever paid, no contract had been made

(Doc. 54, p. 2).

Plaintiff has asserted two breach of contract claims against

Kearney; one is for damages (Complaint ¶¶ 51-52) while the other

is for specific performance (Complaint ¶¶ 53-55).  Under Alabama

law,[4] "[t]he elements of a valid contract are offer, acceptance,

consideration, and mutual assent to its terms."  *Freed v. Cobb*,

845 So.2d 807, 809 (Ala. Civ. App.) (*citing Hargrove v. Tree of

Life Christian Day Care Center*, 699, So.2d 1242, 1247 (Ala.

---

[4]In this action, Alabama law controls.  *Erie Railroad Co. v.
Tompkins*, 304 U.S. 64 (1938).

1997)), *cert. denied*, 845 So.2d 810 (2002).[5]

The asserted facts in the Complaint, which are accepted as true by the Court, *see Grossman*, 225 F.3d at 1231, seem to establish that there was an offer and acceptance between the Plaintiff and Defendants (Complaint ¶¶ 7, 14-16, 18-21, 23-29). That leaves the "consideration" and "mutual assent to its terms" to be established.  These are the elements challenged by Defendant.

The Court notes that whether the parties to a contract have had a meeting of the minds is a factual question to be decided by a jury.  *See Henig Furs, Inc. v. J.C. Penney Co.,* 811 F.Supp. 1546, 1557 (M.D. Ala. 1993).  As such, Kearney must present this issue to a jury as the Court, in a motion to dismiss, is not allowed to make factual determinations.  *See Malone v. Chambers County Bd. Of Commissioners*, 875 F.Supp. 773, 794 (M.D. Ala. 1994).

As far as the element of consideration, the Alabama Supreme Court, in *Files v. Schaible*, 445 So.2d 257, 260 (Ala. 1984), stated the following:

> Adequate consideration exists, or is
> implied, if it arises from any act of the

---

[5]The Court also notes that some Alabama courts also impose a requirement of legal capacity as one of the elements of a valid contract.  *See Gray v. Reynolds*, 514 So.2d 973, 975 (Ala. 1987) (*citing Freeman v. First State Bank of Albertville*, 401 So.2d 11 (Ala. 1981)).  However, as Kearney has not challenged anyone's legal capacity to enter into the contract, the Court will not consider it.

> plaintiff from which the defendant derived a
> pecuniary benefit (i.e. the profitable sale
> of the restaurant business), if such act was
> performed by the plaintiff to the desired
> end, with the expressed or implied assent of
> the defendant.  That which creates and
> carries a benefit to the party promising, or
> causes trouble, injury, inconvenience,
> prejudice, or detriment to the other party,
> is sufficient consideration.  *Cristie v.*
> *Durden*, 205 Ala. 571, 88 So. 667 (1921).
> Conflicting evidence as to whether the
> consideration was adequate creates a question
> of fact to be determined by the trier of
> fact.  *Hyatt's Supply Co. v. Lyle*, 222 Ala.
> 460, 133 So. 3 (1931); *Bush v. Russell*, 180
> Ala. 590, 61 So. 373 (1913).

*Files*, 445 So.2d at 260.  Escapes has asserted facts which, if

believed, would meet the definition of consideration under *Files*

(*see* Complaint ¶¶ 19-20, 22, 25, 27, 31).  Again, though, a jury

must determine whether the consideration was adequate to have

established the contract.

After setting out the elements of a contract and examining

those component parts, the Court finds that Plaintiff has set out

plausible breach of contract claims against Kearney under

*Twombley* and *Iqbal* (Complaint ¶¶ 52, 54-55).  Though constrained

from making factual determinations as to whether there was a

meeting of the minds between the parties and whether the

consideration was adequate, the Court is, nevertheless, satisfied

that Escapes, in its complaint, has "give[n] the defendant fair

notice of what the plaintiff's claim is and the grounds upon

which it rests."  *Conley*, 355 U.S. at 47.

17

In his Motion, Kearney has also asserted that Plaintiff has not met the burden of proving that he committed any form of fraud.  More specifically, Defendant asserts that "[n]o conspiracy existed, no scheme to defraud was perpetrated" (Doc. 41, p. 5).  He further asserts that "[p]romissory fraud and promissory repression are not detailed to meet the Test in Conley" (Doc. 54, p. 2).

Escapes has asserted three fraud claims against Defendant. Specifically, those claims are for fraudulent misrepresentation (Complaint ¶¶ 33-36), promissory fraud (Complaint ¶¶ 38-43), and fraudulent suppression (Complaint ¶¶ 45-50).  Under Alabama law, "[a] claim of promissory fraud is 'one based upon a promise to act or not to act in the future.'"  *Ex parte Michelin North America, Inc*., 795 So.2d 674, 678 (Ala. 2001) (*quoting Padgett v. Hughes*, 535 So.2d 140, 142 (Ala. 1988)).  The *Michelin* Court further quoted *Padgett* in stating as follows:

> "The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation.  To prevail on a promissory fraud claim . . . , two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive."

*Ex Parte Michelin*, 795 So.2d at 678-79 (*quoting Padgett*, 535

So.2d at 142).

The Court notes first that factual assertions in the Complaint would seem to establish a claim of fraudulent misrepresentation (Complaint ¶¶ 13, 19-20).  The allegations made by Escapes are that Defendants falsely told Plaintiff that they would purchase the Property which caused Plaintiff to undertake certain actions which damaged them.  The Court finds that these assertions satisfy the requirements for asserting a claim of fraud as set out in *Ex parte Michelin*.  As such, those assertions state a claim sufficient to survive Kearney's Motion to Dismiss.

Defendant has also challenged Plaintiff's claim for promissory fraud (*see* Complaint ¶¶ 38-43).  On review of the Complaint, however, the Court finds that the asserted facts seem to clearly set out the elements necessary to establish a claim of promissory fraud against Kearney (Complaint ¶¶ 7, 13-16, 17-21, 23-27, 29-31).  Those assertions provide details of Defendant's representations that he, along with the other Defendants, wanted to purchase the Property and information of the procedures they completed to make that purchase a reality.  While those facts, by themselves, do not prove up a claim of fraud, the Defendants' assertion that the money had been wired, when it had not (Complaint ¶¶ 29-31), provides the necessary elements to state a cause of action for promissory fraud to withstand *Twombley* and *Iqbal* at this stage of the proceedings (Complaint ¶¶ 38-43).

Kearney has also challenged the claim for fraudulent

suppression asserted by Plaintiff (*see* Complaint ¶¶ 45-50).  The Alabama Supreme Court has held that "to prove fraudulent suppression, a plaintiff must show (1) a duty to disclose the facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act, and (4) action by the plaintiff to his injury."  *Cato v. Lowder Realty Co.*, 630 So.2d 378, 383 (Ala. 1983) (*citing Wilson v. Brown*, 496 So.2d 756, 759 (Ala. 1986)).

The Court has reviewed the Complaint and finds asserted facts therein which seem to establish a claim of fraudulent suppression against Kearney (Complaint ¶¶ 14-15, 17, 21, 23-29). Within those assertions are allegations that Kearney, along with the other Defendants, had a duty to disclose their decision not to proceed with the purchase of the Property and that their failure to make that disclosure induced Escapes to take multiple actions, to their detriment, to effectuate that sale (*see* Complaint ¶¶ 45-50).  The Court finds that Plaintiff has set out a plausible claim for fraudulent suppression against Kearney under *Twombley* and *Iqbal*.

Finally, Kearney has challenged any evidence of a conspiracy.  Specifically, the Court notes the following assertion in a section of the Motion captioned *Conspiracy*: "Nowhere in the Plaintiff's pleading [sic] do they document when this might have happened, where this might have happened, what the purpose may have been, who would benefit from such a scheme,

and, finally, why would anyone bother to do this" (Doc. 41, p.
4).  The Court notes the following assertions as well:  "No
conspiracy existed, no scheme to defraud was perpetrated, no
meeting of the minds ever took place" (Doc. 41, p. 5); "[n]o
facts have been produced to support the existence of a
conspiracy" (Doc. 41, p. 6); and "[t]here is no factual
discussion by the Plaintiffs that document the alleged
conspiracy" (Doc. 54, p. 2).

Escapes has asserted a claim of conspiracy to defraud
against Kearney (Complaint ¶¶ 56-57).  The Alabama Supreme Court
has stated the following in describing this claim:  "'Civil
conspiracy is a combination of two or more persons to accomplish
an unlawful end or to accomplish a lawful end by unlawful means.
The gist of an action alleging civil conspiracy is not the
conspiracy itself but, rather, the wrong committed.'"  *Hooper v.
Columbus Regional Healthcare System, Inc.*, 956 So.2d 1135, 1141
(Ala. 2006) (*quoting Keith v. Witt Auto Sales, Inc.*, 578 So.2d
1269, 1274 (Ala. 1991)) (internal citations omitted).  As such,
because the underlying wrong—the three claims for fraud—are
considered to be viable claims as of this stage of the
litigation, the conspiracy claim should not be dismissed.  *See
Garrett v. Stanton*, 2008 WL 4701215, at *9 (S.D. Ala. October 22,
2008); *see also Mitchell Co. v. Campus*, 2008 WL 183344, at *6
(S.D. Ala. January 16, 2008).

The Court has reviewed the evidence of record and finds that

Defendant Kearney has failed to demonstrate that Plaintiff cannot establish a single element of any of the claims against him. Though Defendant denies the assertions made against him, the Court finds that Escapes' Complaint has satisfied the requirements of *Twombley* and *Iqbal*.

After thorough consideration of all the relevant pleadings of record, it is recommended that Defendant Kearney's Motion to Dismiss (Docs. 41, 54) be denied and that this action be allowed to continue.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within fourteen days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be

reviewed <u>de</u> <u>novo</u> and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **<u>Transcript (applicable where proceedings tape recorded)</u>**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 17th day of February, 2010.


                              s/BERT W. MILLING, JR.
                              UNITED STATES MAGISTRATE JUDGE